The Honorable Mike Bearden State Senator P.O. Box 1824 Blytheville, Arkansas 72316
Dear Senator Bearden:
This opinion is being issued in response to your recent question regarding the use of local millage revenues by a state community college. You have asked:
 Can a state community college use local millage revenues to construct a building on land leased to it and owned by a public school district?
As explained more fully below, it is my opinion that such an arrangement is not directly addressed by state law (and therefore is not expressly prohibited by state law), but rather, that the arrangement will be governed by the provisions of the lease agreement or by the provisions of the local measure designating revenues for the use of the college.
Clearly, community and technical colleges may local use millage funds for capital outlay projects, as authorized by A.C.A. § 6-61-603(b) and A.C.A. § 6-53-207(d). You have not stated whether the local millage revenues about which you have inquired are monies derived from a millage that was levied by the college's district, as authorized by Amendment 52
of the Arkansas Constitution and A.C.A. § 6-61-602, or whether the revenues are monies derived from county or municipal levies, as authorized by A.C.A. § 6-53-207(e).
Although these statutory provisions authorizing such millages for the use of colleges do not address the issue of construction on leased property, the resolution or other measure by which the funds were designated, having been formulated by the local governing body, may include terms that address the issue. Therefore, the college should review those terms for any such restrictions.
In addition, because both the community college and the public school district are empowered to enter into contracts, see A.C.A. §6-53-302(f)(1) and A.C.A. § 6-13-102, and to control their real and personal property, see A.C.A. § 6-53-302(f)(1) and A.C.A. § 6-13-620, they were free to negotiate the terms of the lease agreement in question. That agreement may address the question of construction on the leased property. Accordingly, the college should review the terms of the lease agreement to determine whether it prohibits or restricts construction on the site.
Clearly, a primary concern regarding the terms of the lease agreement would be whether those terms allow for the reversion of the constructed building to the public school district upon the conclusion of the lease term. If the terms of the lease agreement do allow for such a reversion, it is possible that a legal challenge could ensue. For example, a taxpayer might challenge the contract on the grounds that it constitutes an inappropriate use of tax funds in violation of Article 16, § 11 of the Arkansas Constitution, or that it constitutes an illegal exaction in violation of Article 16, § 13 of the Arkansas Constitution. However, where the terms of such a contract were negotiated pursuant to statutory authority, a challenge of this nature is difficult to sustain in the absence of a showing that the consideration for such terms was so inadequate as to constitute fraud. See Little Rock Chamber of Commercev. Pulaski County, 113 Ark. 439, 168 S.W. 848 (1914); Ops. Att'y Gen. Nos. 94-168; 93-070; 92-022.
To summarize, then, the proposed construction is not directly addressed by state law and is therefore not expressly prohibited or restricted by state law. The terms of the local measure by which the millage funds were designated for the use of the college may address the question. In addition, the terms of the lease agreement may address the question. Therefore, the college should review those terms. If the lease agreement allows for a reversion of the constructed building to the public school district upon the conclusion of the lease term, the contract might be challenged on the basis of constitutional taxation principles. Such a challenge will be difficult to sustain unless it can be shown that the consideration under the contract was so inadequate as to constitute fraud.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh